**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

REGINE DESHOMMES,

                Plaintiff,                        CASE NO.: _____

                                           **PLAINTIFF DEMANDS A**
       v.                                  **JURY TRIAL**

TRANSPORTATION AMERICA, INC.,

                Defendant.

_____/

**COMPLAINT**

Plaintiff, REGINE DESHOMMES ("Plaintiff" or "Ms. Deshommes"), by her undersigned counsel, Derek Smith Law Group, PLLC, files this Complaint against Defendant, TRANSPORTATION AMERICA, INC., ("Defendant" and/or "Trans. America"), and states as follows:

**NATURE OF CASE**

1. This employment discrimination case is about an employer who subjected its black/African American, disabled female employee to relentless harassment, discrimination and retaliation ultimately culminating in the unlawful termination of the employee.

2. Plaintiff Deshommes brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"); Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) ("ADA"); and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

3. Ms. Deshommes seeks monetary relief to redress Defendant's unlawful employment practices in violation of the Title VII, the ADA, and Section 1981. Additionally, this action

seeks to redress Defendant's deprivation of Ms. Deshommes' personal dignity and her civil right to pursue equal employment opportunities.

4. Throughout the course of her employment, Ms. Deshommes found herself at the center of a hostile work environment as part of a scheme orchestrated by Defendant to unlawfully eliminate Ms. Deshommes and similarly situated employees from their positions.

5. Defendant's unrelenting discrimination against Plaintiff culminated with her unlawful termination.

6. At bottom, Defendants are liable for subjecting Ms. Deshommes to a work environment infested with relentless discrimination and for wrongfully terminating because of her race/color, disability and gender.

## JURISDICTION AND VENUE

7. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"); Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) ("ADA"); and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

8. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII, ADA, and Section 1981.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged

herein occurred in this district. Plaintiff was employed by Defendant at 3300 SW 11th Avenue Fort Lauderdale, Florida 33315, which is located in Broward County, Florida.

## **PROCEDURAL PREREQUISITES**

10. Plaintiff has complied with all statutory prerequisites to file this action.

11. On or about September 19, 2019, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant as set forth herein, Charge number 510-2020-00290.

12. An EEOC filing automatically operates as a dual FCHR filing.

13. On or about January 7, 2021, the EEOC issued Plaintiff a Right to Sue Letter, and this Action is being commenced.

14. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

15. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendants.

## **PARTIES**

16. Plaintiff Deshommes is an individual Black/African American woman with a disability (dislocated disc) who is a resident of the State of Florida and resides in Broward County, Florida.

17. Defendant Trans. America is a Florida Profit Corporation duly existing by the virtue and laws of the State of Florida with offices in Miami-Dade County, Florida.

18. Defendant Trans. America is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

19. At all material times, Defendant Trans. America employed Hazel Dumervil (hereinafter referred to as "DUMERVIL") as a General Manager.

20. At all material times, DUMERVIL held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including but not limited to the power to hire and fire Ms. Deshommes.

## FACTUAL ALLEGATIONS

21. Plaintiff Deshommes is an individual Black/African American woman with a qualifying disability (dislocated disc).

22. Plaintiff suffered and continues to suffer from a physical disability which affects major life activities as a result of a dislocated disc she injured in a car accident while at work in or around January 2018. Ms. Deshommes' disability impacts her ability to walk, move, lift heavy items, and stand for long periods of time.

23. On or about January 30, 2017, Defendant hired Plaintiff as a "Driver."

24. DUMERVIL is an individual able-bodied white/Caucasian female with no known disability.

25. Beginning in or around January 2018, shortly after Plaintiff's workplace injury, Defendant began subjecting Plaintiff Deshommes to discrimination and harassment on a repeated and regular basis.

26. In or around January 2018, Plaintiff sustained an injury while at work, suffering a dislocated disc in her back and neck.  Ms. Deshommes consulted a doctor and chiropractor regarding her injury, who in turn recommended that Plaintiff be placed on permanent light duty.

27. In or around January 2018, Plaintiff requested permanent light duty as a reasonable accommodation from DUMERVIL.

28. In the days immediately following, Plaintiff received a reasonable accommodation of light duty, but Defendant, by and through its agent DUMERVIL, stopped providing light duty as a reasonable accommodation after 6 weeks. Plaintiff opposed the removal of her reasonable accommodation at the time Defendant announced its intent to longer provide such accommodation to Plaintiff Deshommes, as she remained injuries and the need for her reasonable accommodation continued. Nonetheless, Plainitiff's reasonable accommodation was discontinued in or about late January 2018.

29. In or around January 2018, at the time of Defendant's discontinuation of Plaintiff's reasonable accommodation, Defendant initiated a relentless campaign of retaliatory actions against Ms. Deshommes, including repeatedly denying her accommodation requests, reducing her work hours, and incessantly and openly referring to Ms. Deshommes as a "**NIGGER**."

30. By means of example and not meant to be an exhaustive list, Defendant discriminated against Plaintiff on the basis of her disability (dislocated disc) by denying Plaintiff's reasonable accommodation request for light duty by refusing to place Plaintiff on light duty after previously providing the same accommodation in or about late January 2018. Plaintiff was denied her accommodation until

31. By means of further example, in or around January 2019, Defendant significantly reduced Plaintiff's hours. At this time, DUMERVIL entirely removed Plaintiff from the work schedule for two weeks at a time. By March 2019, DUMERVIL regularly removed Plaintiff from the work schedule in two-week increments.

32.     By means of example and not meant to be an exhaustive list, when Defendant permitted Plaintiff to work, DUMVERVIL intentionally placed multiple wheelchair passengers on Plaintiff's bus in contravention of her light duty status, requiring Ms. Deshommes to withstand more pressure on her back and further aggravating Plaintiff's injuries.

33.     Amid Plaintiff's struggles to procure a reasonable accommodation, in or about late January 2-019, Defendant subjected Ms. Deshommes to a racially charged hostile work environment.

34.     By means of example and not meant to be an exhaustive list, beginning in or around January 2019, DUMERVIL openly referred to Ms. Deshommes as a "**NIGGER**" on a repeated and relentless basis.   On one occasion, DUMERVIL called Plaintiff an "**IGNORANT BIGGER**" directly to her face.

35.     By further example, in or around January 2019, DUMERVIL repeatedly and openly called Plaintiff a "**WHORE**" and a "**SLUT**."   Additionally, multiple days per week and almost on a daily basis, DUMERVIL called Plaintiff a "**MARRIED MAN's WHORE."** Plaintiff was offended by the use of sexually derogatory epithets in the work place.

36.     On or about April 4, 2019, Plaintiff became ill and registered an abnormally high blood pressure reading.   Plaintiff attempted to leave work by requesting early leave from DUMERVIL. In response to her request, DUMERVIL required her to provide a doctor's note in order to call out, despite having never required other employees to provide doctor's notes in similar circumstances.   In further harassment and discrimination against Plaintiff, DUMERVIL did not allow Plaintiff to return to work until she provided another doctor's note.

37.     On or around April 9, 2019, in response to DUMVERIL's requirements, Plaintiff provided Defendant with the required doctor's notes.  However, to Plaintiff's shock and dismay, DUMERVIL rejected the note, telling Plaintiff that the note was insufficient because it did not specifically state that Plaintiff was cleared to operate a "commercial vehicle."

38.     In or around April 2019, Plaintiff complained to Defendant's Superintendent, Mark (last name unknown), regarding DUMERVIL's race, color, sex, and disability discrimination. Ms. Deshommes told Mark that DUMVERIL repeatedly referred to Plaintiff and other Black employees as "**NIGGERS**."   In response, Defendant's superintendent, Mark, ensured Plaintiff that DUMERVIL's behavior would cease.

39.     Despite the Superintendent's assertions, Plaintiff is unaware of any corrective action taken in response to her complaints of discrimination and harassment.

40.     Following Plaintiff's complaints, DUMERVIL's harassment and discrimination amplified, as she continued to refer to Plaintiff as a "**NIGGER**."  By means of further example and not meant to be an exhaustive list, DUMERVIL, on several different occasions, accused Ms. Deshommes of putting a "**VOODOO**" on her.

41.     On or about April 29, 2019, Defendant unlawfully and wrongfully terminated Plaintiff's employment,

42.     Plaintiff's termination was based on Plaintiff's race, color, sex, disability, for requesting reasonable accommodations, and for complaining about DUMERVIL's incessant discrimination and harassment.

43.     The aforementioned facts are just some of the examples of the discrimination Ms. Deshommes suffered.   Additionally, Ms. Deshommes suffered claims a continuous

practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

44.     Defendant has established a pattern and practice of not only discrimination but also retaliation.

45.     As a result of the acts and conduct complained of, Ms. Deshommes has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.  Ms. Deshommes also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

46.     Ms. Deshommes suffers from increased stress and anxiety.  Similarly, Ms. Deshommes has trouble sleeping as a result of Defendant's conduct.

47.     Further, as a result of Defendant's unlawful employment practices, Ms. Deshommes felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

48.     As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from all Defendants jointly and severally.

49.     Defendant's actions and conduct were intentional and intended to harm Ms. Deshommes.

50.     Ms. Deshommes has presented factual allegations that would permit any reasonable jury to award damages.

51.     At bottom, Defendants are liable for their reckless disregard for Ms. Deshommes' personal dignity and her civil right to pursue equal employment opportunity.

52.   Ms. Deshommes has suffered damages as a result of Defendants' unlawful employment practices.

## COUNT ONE-
### *Disability Discrimination in Violation of the ADA*

53.   Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

46.   Plaintiff claims Defendant Trans. America violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

47.   SEC. 12112. [Section 102] of the ADA specifically states:

(a)   General rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

48.   Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

49.   In or around January 2018, Plaintiff suffered a workplace injury that rendered her disabled (dislocated disc) under the ADA.

50.   Defendant Trans. America violated the sections cited herein by failing to grant Plaintiff's requests for a reasonable accommodation after initially granting them, requiring Plaintiff

to work outside of her reasonable accommodation, and otherwise discriminating and retaliating against the Plaintiff because of her disability and for having complained of discrimination.

51.    29 C.F.R. § 1630.2(o)(3) and (4) explains the term "**Reasonable Accommodations**" stating:

   (3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

   (4) A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability" prong (paragraph (g)(1)(i) of this section), or "record of" prong (paragraph (g)(1)(ii) of this section)…

52.    At all times relevant, Defendant Trans. America, by and through its employees, intended to unlawfully discriminate against Ms. Deshommes in the terms and conditions of her employment because of her disability and Defendant did unlawfully discriminate against Ms. Deshommes in the terms and privileges of her employment because of her disability in violation of the ADA.

53.    Defendant Trans. America violated Plaintiff's rights under the ADA by (i) discriminating against Plaintiff regarding the conditions and privileges of employment because of his disability, (ii) wrongfully terminating Plaintiff because of his disability, (iii) failing to grant

Plaintiff's requests for a reasonable accommodation after initially granting it, and (iv) requiring Plaintiff to work outside of her reasonable accommodation.

54. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the ADA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

55. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

56. Conduct of Defendant Trans. America and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

57. Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

## COUNT TWO-
### *Hostile Work Environment in Violation of the ADA*

54. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

58. Plaintiff claims Defendant Trans. America violated Title VII of Civil Rights Act of 1964 as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

59. Plaintiff claims a continuous practice of a hostile work environment based on her disability and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

60.     On a daily and consistent basis throughout the course of her employment, Plaintiff's Supervisor DUMERVIL took harassing and discriminating conduct against Plaintiff relating to Plaintiff's disability, including failing to grant Plaintiff her requested reasonable accommodation after initially granting it and requiring Plaintiff to work outside of her reasonable accommodation, further aggravating Plaintiff's health condition/disability.

61.     SEC. 12112. [Section 102] of the ADA specifically states:

     (b) General rule. - No covered entity shall discriminate against a

qualified individual with a disability because of the disability of such

individual in regard to job application procedures, the hiring, advancement,

or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment.

62.     Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

63.     In or around January 2018, Plaintiff suffered a workplace injury that rendered her disabled (dislocated disc) under the ADA.

64.     Defendant Trans. America violated the sections cited herein by failing to grant Plaintiff's requests for a reasonable accommodation after initially granting them, requiring Plaintiff to work outside of her reasonable accommodation, and otherwise discriminating and retaliating against the Plaintiff because of her disability and for having complained of discrimination.

65.     29 C.F.R. § 1630.2(o)(3) and (4) explains the term "**Reasonable Accommodations**" stating:

(3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

(4) A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability" prong (paragraph (g)(1)(i) of this section), or "record of" prong ( paragraph (g)(1)(ii) of this section)…

66.     At all times relevant, Defendant Trans. America, by and through its employees, intended to unlawfully harass Ms. Deshommes in the terms and conditions of her employment because of her disability and Defendant did unlawfully create a hostile work environment in the terms and privileges of her employment because of her disability in violation of the ADA.

67.     Defendant Trans. America violated Plaintiff's rights under the ADA by (i) harassing Plaintiff regarding the conditions and privileges of employment because of his disability, (ii) wrongfully terminating Plaintiff because of his disability, (iii) failing to grant Plaintiff's requests for a reasonable accommodation after initially granting it, and (iv) requiring Plaintiff to work outside of her reasonable accommodation.

68.     As a direct and proximate result of Defendant's intentional harassing conduct in violation of the ADA, Plaintiff suffered and will continue to suffer damages including lost wages

and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

69.  Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

70.  Conduct of Defendant Trans. America and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

71.  Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

### COUNT THREE-
### *Retaliation in Violation of ADA*

72.  Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

73.  At all times relevant, Defendant's employees intended to unlawfully discriminate against Ms. Deshommes in their terms and conditions of her employment in violation of the ADA because she opposed a practice made unlawful by the ADA and Defendant unlawfully retaliated against Ms. Deshommes because of that opposition.

74.  At all times relevant, Ms. Deshommes acted in good faith and with the objective and subjective belief that violations of the ADA by Defendant Trans. America's employees had occurred.

75.  Defendant failed to properly investigate Plaintiff's complaints and failed to take appropriate corrective action.

76.  At all times material, Defendant allowed the discriminatory practices to continue in the work environment.

77. At all times relevant, the unlawful discrimination by Defendant's employees against Ms. Deshommes in the terms and conditions of her employment because she opposed a practice made unlawful by the ADA which would not have occurred but for that opposition.

78. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

79. At all times relevant, Defendant's employees acted intentionally and with reckless disregard of Ms. Deshommes' rights protected by the ADA.

80. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

81. As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the ADA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

82. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

83. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

84. Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

<u>**COUNT FOUR-**</u>
*Race and Color Discrimination in Violation of Title VII*

58. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

59. Plaintiff claims a continuous practice of a hostile work environment based on her race and color and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

60. On a daily and consistent basis throughout the course of her employment, Plaintiff's Supervisor DUMERVIL made derogatory and discriminatory comments relating to Plaintiff's race and color.

61. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

62. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her race and color.

63. At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Ms. Deshommes in the terms and conditions of her employment because of her race and color, and Defendant did unlawfully discriminate against Ms. Deshommes in the terms and privileges of her employment because of her race and color in violation of Title VII.

64. Ms. Deshommes was subject to offensive and derogatory discriminatory conduct during her employment with Trans. American and this conduct was directed to and perpetuated upon Plaintiff because of her race and color.

65. Defendant Trans. America was notified about and was otherwise aware of the racially harassing and discriminatory conduct directed at Ms. Deshommes by Defendant's employees and Trans. America failed to take appropriate corrective action.

66. The racially harassing and discriminatory directed at Ms. Deshommes was sufficiently severe and pervasive so as to unreasonably interfere with Ms. Deshommes' physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

67. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

68. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

69. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

70. Plaintiff has been damaged by the illegal conduct of Defendant.

71. Plaintiff Deshommes has been damaged by Defendant's illegal conduct.

## COUNT FIVE-
### *Sex/Gender Discrimination in Violation of Title VII*

72.  Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

73.  Plaintiff claims a continuous practice of a hostile work environment and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

74.  On a daily and consistent basis throughout the course of his employment, Plaintiff's Supervisor DUMERVIL made offensive, derogatory, and inappropriate comments and name-calling relating to Plaintiff's gender/sex.

75.  Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

76.  Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender/sex.

77.  At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Ms. Deshommes in the terms and conditions of her employment because of her sex/gender and Defendant did unlawfully discriminate against Ms. Deshommes in the terms and privileges of her employment because of her sex/gender in violation of Title VII.

78.  Ms. Deshommes was subject to unwelcome, offensive and harassing sexually discriminatory conduct during her employment with Trans. America and this conduct was directed to and perpetuated upon Plaintiff because of her sex/gender.

18

79.     Defendant Trans. America was notified about and was otherwise aware of the sexually harassing and discriminatory conduct directed at Ms. Deshommes by Defendant's employees and Defendant failed to take appropriate corrective action.

80.     The sexually harassing and discriminatory conduct directed at Ms. Deshommes was sufficiently severe and pervasive so as to unreasonably interfere with Ms. Deshommes' physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

81.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

82.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

83.     Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

84.     Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

## COUNT SIX-
### *Hostile Work Environment in Violation of Title VII*

85.     Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

86.   Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer

practices It shall be an unlawful employment practice for an employer – (1) to fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin."

87.   Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristics,

her race, color, and sex/gender, and the conduct was severe or pervasive enough to make a

reasonable person of the same legally protected class believe that the conditions of

employment were altered, and that the working environment was intimidating, hostile or

abusive.

88.   Defendant Trans. America's Employee/Manager/Supervisor DUMERVIL directed

repeated discriminatory and harassing comments to Plaintiff based on her race, color, and

sex/gender, including repeatedly using racial and sexual epithets including "**nigger**,"

"**ignorant nigger**," "**slut**," "**whore**," and "**married man's whore**."

89.   The harassing treatment of Plaintiff included, but was not limited to, repeated use of racial

and sexual derogatory epithets and wrongfully terminating Plaintiff after her complaints of

sex and race/color discrimination.

90.   The harassing actions of Defendant against Plaintiff, as described and set forth above,

constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff

to adverse employment action on the basis of her sex/gender and race and color, Defendant

intentionally discriminated against Plaintiff with respect to the compensation, terms,

conditions, or privileges of her employment.

91.   The harassing conduct was directly connected to Ms. Deshommes sex/gender, race, and color.

92.   Defendant's leadership, namely DUMERVIL, made numerous comments related to Ms. Deshommes' race, color, and sex/gender.

93.   When Ms. Deshommes voiced her objections to this harassing and discriminatory treatment, not only did Defendant fail to address her concerns, but they also continued the pattern of discrimination by making further discriminatory comments.

94.   Plaintiff did not welcome Defendant's discriminatory conduct or comments.

95.   Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. Deshommes' working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

96.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

97.   Defendant Trans. America's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

98.    Conduct of Defendant Trans. America and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

99.    Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

**COUNT SEVEN-**
*Retaliation in Violation of Title VII*

100.   Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

101.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

102.   At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendant Trans. America's employees had occurred.

103.   Plaintiff opposed discriminatory conduct by Defendant which is prohibited by Title VII when she complained to Defendant about the sex/gender and race and color discrimination and hostile work environment that she was subjected to as described and set forth above.

104.   Plaintiff's complaints involved Defendant's unlawful and discriminatory actions and therefore constituted protected activity under Title VII.

105.   Ms. Deshommes complained of her supervisor's repeated use of racial and sexual slurs.

106.    At all times relevant, the unlawful discrimination by Defendant employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

107.    At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

108.    Defendant intentionally retaliated against Plaintiff by harassing her and unlawfully discharging her for complaining of actions by Defendant made unlawful under Title VII.

109.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

110.    Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

## COUNT EIGHT-
### *Race/Color Discrimination in Violation of 1981*

111.    Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

112.    42 U.S. Code § 1981 - Equal rights under the law states provides:

(a)    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)     For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c)     The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

113.    Defendant engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiff on account of Plaintiff being of Black race.

114.     Defendant violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to compensation, terms, conditions or privileges of her employment.

115.     Plaintiff's race characteristics were a determinative or motivating factor in Defendant's employment actions.

116.    Defendant cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendant for their actions against Plaintiff are pretextual and can readily be disbelieved.

117.    Plaintiff's protected status played a motivating part in the Defendant's decisions even if other factors may also have motivated Defendant's actions against Plaintiff.

118.    Defendant's harassing and highly offensive conduct and statements to Plaintiff on account of Plaintiff's race adversely affected the terms, conditions, and privileges of Plaintiff's employment.

119. Defendant's conduct was adequately severe and pervasive so as to alter the work environment and create an abusive and hostile work environment for Plaintiff.

120. Defendant acted upon a continuing course of conduct.

121. Defendant constantly enforced a purposefully discriminatory pattern and practice of depriving Plaintiff, a Black individual, of the equal rights afforded to her, in violation of 42 U.S.C. §1981.

122. Defendant violated Section 1981, and Plaintiff suffered numerous damages as a result.

123. Plaintiff makes her claim against Defendant under all of the applicable paragraphs of 42 U.S. Code § 1981.

124. As a result of Defendant's violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits to the Plaintiff.

125. As alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

126. As a result of Defendant's violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

127. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

128. Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

## COUNT NINE-
### *Relation in Violation of Section 1981*

126.    Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

127.    Plaintiff, as an individual of Black race, was discriminated against by Defendant on account of her race, in violation of Section 1981.

128.    Plaintiff engaged in protected activity by making several complaints to the Defendant and opposing Defendant's unlawful actions.

129.    Plaintiff was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place, including increased and repeated use of racial epithets.

130.    There was a causal connection between the Defendant's materially adverse actions and Plaintiff's protected activity.

131.    The Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

132.     As a result of the Defendant violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

133.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

134.    Plaintiff Deshommes has been damaged by the illegal conduct of Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial, plus interests, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorney's fees, costs, disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues triable before a jury.

Dated: April 5, 2021                    **DEREK SMITH LAW GROUP, PLLC**
      Miami, FL                              701 Brickell Ave, Suite 1310
                                               Miami, FL 33131
                                               Tel: (305) 946-1884
                                               Fax: (305) 503-6741

                                               s/ Lauren Tobin
                                             Lauren Tobin, Esq.
                                             Florida Bar No. 1024850
                                           Lauren@dereksmithlaw.com

                                             *Counsel for Plaintiff Regine Deshommes*